# Dabney *v.* The State.

*Indictment for Murder.*

1. *Homicide; self-defense can not be invoked when the killing is the result of the slayer's own wrong.*—Where a person by his own wrong contributes to a situation out of which arises a necessity to take the life of another to preserve his own, he occupies the position of one who provokes a difficulty, and can not invoke the doctrine of self-defense to justify the homicide, the necessity for the commission of which resulted from his own wrong; and illicit intercourse with the wife of the person slain is such a wrong as will take away from the slayer the right of self-defense.

2. *Same; murder when slayer arms himself with intent to kill if interfered with in commission of a wrong.*—When a person, entering upon the commission of a wrongful act, and apprehending that he may be interfered with by another in his undertaking, arms himself with a deadly weapon, with the intention to take the life of that other if it should be necessary to save his own in the course of such interference, and if upon being interfered with as contemplated, he does take the life of said person in pursuance of such intent, he is guilty of murder in the first degree; and if the wrongful act sought to be committed

[Dabney v. The State.]

be the illicit intercourse with a man's wife and in the course of the interference by the husband the latter is slain by means of the deadly weapon with which the slayer had armed himself with the intent to kill if necessary to save his own life upon being interfered with, the slayer is guilty of murder in the first degree.

3. *Same; evidence of powder burns; when admissible.*—On a trial under an indictment for murder, where the evidence shows that the deceased was slain by being shot as he entered the door of a house, it is competent to ask a witness who had described the scene of the killing "if he saw any powder burns upon the door of said house;" and the testimony of such witness that he was familiar with powder burns and that in his opinion there were powder burns on the facing of the door of said house is admissible.

4. *Same; evidence of former difficulty inadmissible.*—On a trial under an indictment for murder, where the evidence shows that the deceased was killed by the defendant upon his breaking down the door and entering a house wherein the defendant and the deceased's wife were, in illicit relations, evidence that a short time prior to the homicide, the deceased tried to kill his wife is immaterial and irrelevant to any issue involved, and is not admissible.

5. *Evidence of good character; charge of the court in reference thereto.*—In a criminal case, evidence of good character may be sufficient to generate a doubt only when considered in connection with the other evidence in the case, and a charge which instructs the jury that they "may look at the good character of the defendant in connection with the other evidence in the case, and this good character may be, of itself, sufficient to generate a reasonable doubt of defendant's guilt," is properly refused, as giving undue prominence to the evidence of defendant's good character.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN G. WINTER.

The appellant was indicted and tried for the murder of Flem Faulkner, was convicted of murder in the second degree, and sentenced to the penitentiary for twelve years.

The evidence for the State, as shown by the bill of exceptions, tended to show that upon the night of the killing, Flem Faulkner came to the house which was occupied by his wife, Harriet Faulkner, and asked for admittance; that he was refused admittance to the house, whereupon he proceeded to break down the door, and upon entering the door he was shot by the defendant; that the defendant was in the house of Harriet Faulkner with a pistol; that Harriet Faulkner, the wife of the deceased, was in the house with defendant undressed, and there was no light in the house.

The testimony for the defendant tended to show . that upon Flem Faulkner coming to the house and demanding admittance, he said he had come to kill both the people who were in the house, and that, after breaking open the door, he entered the house with his pistol drawn, and pointed at the defendant, whereupon the defendant fired and killed him; and that there was no exit from the house except through the door Flem Faulkner was entering at the time he was killed.

Upon the examination of one Freeman as a witness for the State, and after he had testified as to the scene of the killing, he was asked by the solicitor the following question : "If he saw any powder burns upon the door of said house?" The defendant objected to this question, and duly excepted the court's overruling his objection. Upon the witness answering that he "saw something on the facing of the door that looked like powder burns, that he was familiar with powder burns, and in his opinion it was powder burns," the defendant moved to exclude the answer from the jury. The court overruled the motion and the defendant duly excepted.

Upon the examination of the wife of the deceased as a witness on behalf of the defendant, she was asked the following question : "If Flem Faulkner did not try to kill her on the previous Saturday night, and if he did not shoot at her on said Saturday night?" Upon the State interposing an objection to this question, the court sustained the objection, and the defendant duly excepted.

The court charged the jury *ex mero motu*, as follows : "The mere fact of itself and alone that the defendant was caught in company with the wife of the deceased and in preparation of a contemplated act of adultery, if the evidence establishes beyond a reasonable doubt that such was the case, does not deprive the defendant of the doctrine of self-defense, provided there was a present impending peril to life . or danger of great bodily harm, either real or so apparent as to create a *bona fide* belief of an existing necessity for taking the life of the deceased, and provided there was, at the time, no convenient or reasonable mode of escape by flight without increasing his own peril. But if the defendant, having reason to believe that he would probably be detected by the deceased in his contemplated adulterous intercourse, if such were his pur-

pose, while armed with a deadly weapon, and with the preconceived purpose and formed design of using said weapon on the deceased, should he be thus detected, and should it become necessary to protect himself from any assault the deceased might make on him, even of a deadly nature, then defendant would be deprived of the doctrine of self-defense; for, under such facts, if they be facts, he would not be free from fault in bringing on the difficulty. But such facts must be established to the satisfaction of the jury beyond all reasonable doubt, and the burden of proof is on the State, when the jury are satified, from the evidence, of the existence of the other elements as before charged, necessary to invoke this doctrine." Defendant objected to that part of the charge of the court commencing with the words, "But if the defendant, having reason to believe," and thence on to the end.

The court gave the following charge at the instance of the State: "If the jury believe, from the evidence beyond a reasonable doubt, that in this county and before the finding of this indictment the defendant went to the house of Harriet Faulkner, armed with a deadly weapon, for the purpose of having adulterous intercourse with the said Harriet Faulkner, and with the formed design to shoot and kill Flem Faulkner, her husband, should he interfere during said illicit connection, and that said Flem Faulkner came upon defendant while defendant was in the house of his wife, Harriet, and said Harriet had off her dress and with the light out, and demanded and was refused admittance, and that the deceased drew his pistol on defendant and pointed it at him, and thereupon defendant killed Flem Faulkner in pursuance of a formed design to do so, the defendant would be guilty of murder in the first degree." The defendant excepted to said charge as given. The court gave the following charge in writing at the request of the solicitor: "The defendant can not be said to have been free from fault in bringing on the difficulty, if he went to the house of the wife of the deceased for the purpose of having carnal intercourse with her, and there was reasonable probability that the husband would come upon him in the act or before, or just after the act, and went there armed with a pistol with the formed design to shoot his way out, should he be attacked by the hus-

band under such circumstances." The defendant excepted to said charge as asked by the State and given by the court. Defendant requested the following charge in writing: "The jury may look at the good character of the defendant in connection with the other evidence in the case, and this good character may of itself be sufficient to generate a reasonable doubt of defendant's guilt." The court refused to give said charge and defendant then and there duly excepted.

No counsel marked as appearing for appellant.

WILLIAM C. FITTS, Attorney-General, for the State.— The defendant in this case could not invoke the doctrine of self-defense. The necessity for the killing was the result of his own wrongful acts, and he was in the attitude of having provoked the killing himself.—*Cloud v. State*, 7 S. E. Rep. 641; *Drysdale v. State*, 83 Ga. 744; *Wilkerson v. State*, 91 Ga. 729.

The court properly refused to give the charge requested by the defendant.—*Grant v. State*, 97 Ala. 35; *Johnson v. State*, 102 Ala. 1; *Goldsmith v. State*, 105 Ala. 8; *Webb v. State*, 106 Ala. 52.

McCLELLAN, J.—It is, and always has been, an elementary principle of criminal law, so familiar as not even to require a citation of our own numerous adjudications upon it, that one who provokes a difficulty—who by his own wrong contributes to a situation out of which arises a necessity to take the life of another to preserve his own—can not invoke the doctrine of self-defense to justify the homicide he commits in such difficulty—can not plead a necessity to kill which arose from his own wrong. Sexual intercourse with the wife of another is such a wrong, so obviously calculated to bring on a difficulty with the husband, as that the law itself recognizes it as provocation sufficient to reduce the killing of the adulteress and her paramour by the husband, upon detecting them in the act, to manslaughter: a wrong which is an adjudged provocation to homicide on the part of the husband. If, as in the case at bar, the paramour, in order to save his own life from the consequences of the deadly passions of the husband, excited by the wrong of the former, slays the husband, he can in no sense be

[Thornton v. The State.]

said to have been free from fault in bringing about the mortal rencounter ; the fatal result, to the contrary, is traceable directly to his own wrong, and he can not justify his act by an invocation of the doctrine under which one free from fault and unable to retreat, is authorized to save his own life by destroying that of another.

It is also a too elementary and familiar principle of law to need discussion or reference to authorities, that if one entering upon the commission of a wrongful act has in contemplation that another will or may interfere with his enterprise, arms himself with a deadly weapon with the intent to take the life of that other should it become necessary to save his own in the course of such interference, and who in fact does take the life of the person so interfering in pursuance of such intent, is guilty of murder in the first degree ; the intent to kill under the conditions contemplated constituting the "formed design" sufficient and necessary in murder, when the circumstances of the act do not justify the design, and the wrongfulness of the act in which the slayer was engaged at the time the necessity to strike arose precluding all justification of the design.

The application of the foregoing principles to the instructions given by the court to the jury demonstrates that if these instructions have any infirmity, it lies in their being too favorable to the appellant.

The charge requested by the defendant was properly refused.—*Goldsmith v. State*, 105 Ala. 8 ; *Grant v. State*, 97 Ala. 35 ; *Miller v. State*, 107 Ala. 40.

The court committed no error in its rulings upon the admissibility of evidence.

Affirmed.