# Williams *v.* The State.

### *Indictment for Murder.*

1. *Homicide; charge to the jury.*—On a trial under an indictment for murder, where all the evidence in the case, including the testimony of the defendant, showed that the defendant was guilty of murder, and the evidence further showed a motive for the commission of the deed, that the defendant acted upon said motive, that he determined on the killing beforehand, and made preparations therefor, and that there was no justification or excuse for the killing, it is not error for the court to instruct the jury at the request of the solicitor that "if you believe all the evidence in this case beyond a reasonable doubt, you must convict the defendant."

2. *Same; same.*—In such a case, where the evidence tended to show that the defendant and his wife conspired together to kill the deceased, because he had, several months prior to the killing, ravished the defendant's wife, and that in carrying out said conspiracy the wife lured the deceased to the defendant's house by writing him a note, and that it was while the deceased was at the defendant's house, in response to said note, that he was killed, and further that the fatal shot was fired as the deceased was walking away from the defend-ant's house with his back toward the defendant, the court does not commit an error in instructing the jury, upon t request of the solicitor for the State, that "if the jury be-lieve from the evidence beyond all reasonable doubt that the deceased, several months prior to the killing, did have sexual intercourse with the defendant's wife, with or without force, and that the defendant, in Bibb county, Alabama, and before the finding of this indictment, killed the deceased by decoy-ing him to his (defendant's) house, and by lying in wait for him, on account of such illicit intercourse between deceased and defendant's wife, then defendant is guilty of murder in the first degree, and it is the sworn duty of the jury to so find their verdict."

3. *Ruling on charges; how presented for review.*—The statute which dispenses with the necessity in civil and criminal cases of noting exceptions to rulings on charges requested (Code, § 613) makes it essential to the presentation of such rulings on appeal, in the absence of exceptions thereto, that such rulings be assigned as error.

4. *Homicide; argument of counsel to jury; charge of court.*—On a trial under an indictment for murder, where it was shown that several months before the killing the deceased had de-bauched the defendant's wife, but the evidence in the case, including the defendant's testimony, shows that the defend-ant was guilty of murder, if the counsel for the defendant, in their argument to the jury, so far transcends the limit of legitimate argument as to seek to impress upon the jury that the killing was justifiable, by reason of such debauchery, and states that the defendant was simply protecting the virtue of the wives and daughters of the citizens of the county where the killing occurred, and that he had done nothing more than what every other man on the jury would have done, and the entire argument of counsel sought in this way to work upon the prejudice of the jury, it is proper and free from objection or error for the trial court, in its gen-eral charge to the jury, to instruct them as follows: "Courts are established to administer the law and enforce its execu-

[Williams v. The State.]

tion. The law is the only standard by which judges and jurors can be governed; and in considering their verdict jurors should be governed by the law as given them and by the evidence. The only protection to the life, liberty and property of the citizen is in a prompt, honest and impartial enforcement of the law, and if juries should intentionally and willfully disregard the law then the law is useless, and the court houses and jails might as well be torn down, the offices of judge, clerk and sheriff, and all other machinery necessary for the administration of the law be abolished, and save the people the tax paid for maintaining and carrying on the courts."

5. *Same; admissibility of statement made by deceased.*—On a trial under an indictment for murder, statements made by the deceased, after he was shot, but without any reference to his expectation of dying, or his impending dissolution, and which statements are to the effect that he was at fault or to blame for the shooting, that the defendant had been good to him, and that he did not want him prosecuted, are properly excluded from the jury, whether made voluntarily or not, because such statements have no relation to the circumstances of the killing, and are otherwise irrelevant and immaterial.

6. *Same; admissibility of evidence.*—On a trial under an indictment for murder, where there is evidence showing a conspiracy between the defendant and his wife to kill the deceased, and that for the purpose of carrying out this conspiracy a letter was written by the wife to the deceased, it is competent for the State to prove by the deceased's dying declarations, that the wife wrote to him to come to see her.

7. *Same; same.*—On a trial under an indictment for murder, testimony as to what passed between the deceased and the defendant several minutes after the shooting and while the former was lying helpless on the ground, constitutes no part of the *res gestae* of the shooting, and is inadmissible in evidence.

APPEAL from the Circuit Court of Bibb.

Tried before the Hon. JOHN MOORE.

The appellant, Joseph Williams, was indicted and tried for the murder of Thomas Nicholson, was convicted of murder in the first degree and sentenced to the penitentiary for life.

It was shown by the evidence that the killing occurred in September, 1898. · There was . also evidence introduced that the deceased, Thomas Nicholson, several months before the killing, had had illicit intercourse

with the defendant's wife and that this was accomplished by force and threats on the part of said Nicholson; that the defendant's wife told him of this fact about July 15th; and the evidence for the State tended to show that it was on account of said Nicholson having debauched his wife that the defendant killed him. The other facts of the case are sufficiently set forth in the opinion.

One J. W. Green, a witness for the State, testified that the next day after Nicholson was shot, he went to see Nicholson and there took down a statement as made by Nicholson, which statement said Nicholson swore to before him, the witness, as a justice of the peace. This witness testified that at the time of taking down the statement Nicholson said nothing about dying, but that he, the witness, said to Nicholson that the statements made must be voluntary. Upon the defendant offering to introduce this statement in evidence, the State objected, the court sustained the objection, and the defendant duly excepted. The substance of the statement is shown in the opinion.

The defendant offered to prove certain statements made by the defendant to Nicholson, after Nicholson was shot, and while he was lying on the ground, and also certain statements made by Nicholson in talking to the defendant at that time. The State objected to the introduction of each of said statements, the court sustained the objection, and the defendant duly excepted. The defendant duly excepted to the portion of the court's oral charge to the jury, which is copied in the opinion.

There were several charges requested by the defendant, which the court refused to give, but the bill of exceptions contains no recital that the defendant excepted to the court's refusal to give these several charges, nor are there any assignments of error made by the defendant.

S. D. LOGAN and CATO D. GLOVER, for appellant.

CHAS. G. BROWN, Attorney-General, for the State.

McCLELLAN, C. J.—The appellant, Williams, was indicted for the murder of one Nicholson. He was convicted of murder in the first degree, the jury assessing his punishment at imprisonment in the penitentiary for life; and he was sentenced accordingly. That he was guilty of murder all the evidence in the case including his own testimony concurred in demonstrating. Not only so, but no part of the evidence afforded any basis for an inference to the contrary. A motive to kill was shown. That the defendant acted on this motive was shown. That he determined on the killing beforehand was shown. That he made preparation to kill was shown. That he did kill without justification or excuse by shooting the deceased in the back was shown. And all and each of these facts was shown directly by the express testimony of the defendant himself. Nor was there any other evidence adduced in conflict with this. On this state of the case the trial court did not err in charging the jury at the request in writing of the solicitor "that if you believe all the evidence in this case beyond a reasonable doubt, you must convict the defendant."

But the evidence went even further than has been indicated above. It tended to show that the defendant and his wife conspired together to kill Nicholson, that the wife's part in this conspiracy was to lure him to their house, that to this end she wrote him one, probably two, notes requesting him to come there, that in response to these notes he went there, that defendant loaded his gun and remained at home for the purpose of killing the deceased when he should come, that when he saw Nicholson approaching he said to his wife: "There is your man now." That the wife then said to the defendant: "Will you let me speak to him before you kill him?" that he told her she could, that Nicholson came up to where defendant and his wife were sitting in the door of their house, spoke to them, asked what Mrs. Williams wanted to see him about, and, after talking with her a few minutes on that matter, left them and started to leave the premises, that as he walked away the woman said to the defendant, "if you are not going to kill the s—n of a b—h, give me the gun and

I will," that he replied, "Never you mind. You need not be uneasy. He will not turn over the hill," that he then reached up and got his gun, took deliberate aim first at Nicholson's head, but then bethinking him not to kill him instantly but to inflict a mortal wound on his victim so that he would linger for a time to suffer, he lowered his aim and shot him, when fifty or sixty feet away, in the back, the ball fracturing the inner portion of the spinal column, and producing death several days afterwards. On these tendencies of the evidence if they presented the real facts, as the jury could not well escape from finding they did, this homicide was perpetrated by lying in wait," and was murder in the first degree by the express provision of the statute—an assassination pure and simple. Nor was the degree of criminality at all lessened or lowered by the fact that Nicholson had had sexual intercourse with the defendant's wife, nor by the fact, if it be a fact, that he had accomplished this intercourse by force; these alleged facts having come to the knowledge of defendant a month before the homicide.—*McNeill v. State*, 102 Ala. 125; *Rogers v. State*, 117 Ala. 9; *Robinson v. State*, 108 Ala. 14; *State ex rel. v. Tally*, 102 Ala. 25, 33-5. And on the foregoing tendencies of the evidence the circuit court committed no error in charging the jury at the request of the solicitor that "if the jury believe from the evidence beyond all reasonable doubt that the deceased, several months prior to the killing, did have sexual intercourse with the defendant's wife, with or without force, and that the defendant, in Bibb county, Alabama, and before the finding of this indictment, killed the deceased by decoying him to his (defendant's) house, and by lying in wait for him, on account of such illicit intercouse between deceased and defendant's wife, then defendant is guilty of murder in the first degree, and it is the sworn duty of the jury to so find their verdict." It does not appear from the bill of exceptions that the court did not instruct the jury in definition of murder in the second degree, and it is, therefore, to be assumed that such instructions were given. Nor is it at all made to appear by this record that the court in any way impinged upon the statutory right and duty

of the jury to find upon conviction and set forth in their verdict the degree of murder of which they find the defendant guilty, unless the charge quoted last above was an invasion of the jury's province in this respect. We do not think it was such an invasion. The statute provides: "When the jury find the defendant guilty under an indictment for murder, they must ascertain, by their verdict, whether it is murder in the first or second degree."—Code, § 4857. It in nowise interferes with the performance with this duty for the court to instruct them as to the ingredients of murder in the first degree and to further tell them that if the facts constituting murder in that degree have been proven to their satisfaction to the exclusion of all reasonable doubt of their truth it is their duty under their oaths to find the defendant guilty of murder in the first degree; and a like charge in respect of murder in the second degree would also, of course, be proper; and we may assume that such charge was given in this case. Such charges are not only proper, but they are necessary to inform the jury under what circumstances their duty to ascertain by their verdict the degree of murder should be excercised to a declaration of guilt in the first degree and under what circumstances their declaration should be of guilt in the second degree. Nothing *decided* in the case of *Gafford v. State*, 125 Ala. 1, nor in *Brown v. State*, 109 Ala. 70, is opposed to the foregoing views and conclusion, and so far as anything *said* in either of those cases may be supposed to imply more than that the court in murder trials should instruct the jury upon the law as to each degree of that offense and direct them to declare by their verdict, if of conviction of murder, the degree of which they find the defendant guilty, the opinions in those cases are to be taken as modified. In each of those cases the court in substance declared that the defendant was guilty of murder in the first degree, or else of no offense, and *declined* to instruct the jury at all upon the law of murder in the second degree. This was not only to tell the jury they could not return a verdict of guilt in the minor degree, but was further to leave them without any instructions upon which they could have intelligently ascertained by their verdict

whether the offense was murder in the first or second degree. And our conclusion is against the insistence of appellant's counsel that the charge under consideration is bad upon the authority of those cases.

The bill of exceptions shows that the presiding judge refused to give written charges 1, 2, 4, 5, 6, 7, 8, 12, 13 and 14, requested by defendant, and these several requested instructions are set out. But no exceptions were reserved to these rulings of the court and they were not assigned as error. We cannot, therefore, review them. Exceptions not being expressly reserved, we would under the statute (Code, § 613), be authorized and required to review the rulings in question if errors were assigned upon them; but not otherwise.—*Alston v. State*, 109 Ala. 51; *Wesson v. State*, 109 Ala. 61; *Smith v. State*, 129 Ala. 89.

The bill of exceptions contains the following remarkable statement: "The counsel for the defendant in their arguments to the jury said [in] substance to the jury 'that the defendant ought to have killed Nicholson, that he did right in doing so, that every man on the jury would have done the same thing. That he was simply defending the virtue of his wife and daughters of every juror and every other white man in Bibb county, and that the jury owed it to their wives and daughters and all the women in Bibb county to acquit the defendant. That defendant had done nothing but what every other man on the jury and every other man would have done. That it would never do to convict the defendant, and that it would never do to let it go out to the world that a Bibb county jury had convicted a man under such circumstances. That the people of Bibb county and public opinion everywhere would sustain and uphold a verdict of acquittal. That Nicholson would have been hung if he had been indicted, and that the defendant had done the county a service in killing him by saving the county the delay and expense incident to the trial and conviction.' Their entire argument was an appeal to the jury for an acquittal on the line stated." It is much to be regretted that counsel, who are officers of the court, and under a special and solemn duty to support and uphold the law and

[Williams v. The State.]

to conserve its due administration by courts and juries, should thus in the zeal of advocacy or under the bias of extreme partizanship so far forget their duties to the courts and to organized society as in effect to call upon jurors to disregard their oaths, to trample under foot the law which they themselves, as members of the body politic, have participated in making for the just and equal protection of all the people, and to try and determine this cause upon considerations which the experience and wisdom of the ages have demonstrated to be subversive of all order and authority, and logically leading to the substitution of private vengeance, the retribution of the assassin and the terrors of anarchy for the law of the land and its ministers. It is deplorable to the last degree that counsel charged to aid jurors, should seek to turn them from the plain road of the law, leading to manifest justice, into the devious and noxious by-ways of prejudice and passion and perjured conscience leading to acquittal of a self-confessed murderer, and even beyond this to his commendation as for a service rendered to the county in that he decoyed one of her citizens within the easy range of his rifle, and, from behind his back, brutally shot him to death. It is to the credit of the county of Bibb that her jurors were not swerved from their duty by these illegitimate appeals and asseverations; and it is to the credit of the judiciary of Alabama that the learned judge who presided at the trial took occasion to uphold the dignity of the bench and the reign of law in his charge to the jury in these words: "Courts are established to administer the law and enforce its execution. The law is the only standard by which judges and jurors can be governed; and in considering their verdict jurors should be governed by the law as given them and by the evidence. The only protection to the life, liberty and property of the citizen is in a prompt, honest and impartial enforcement of the law, and if juries should intentionally and willfully disregard the law then the law is useless, and the court-houses and jails might as well be torn down, the offices of judge, clerk and sheriff, and all other machinery necessary for the administration of the law be abolished, and save the people the tax paid for main-

taining and carrying on the courts." The judge was well within his powers and rights in thus attempting to remove from the minds of the jurors the poison of the unwarranted appeals of counsel to their passions and prejudices and to bring them back, if indeed they had been led astray, to a trial of the case upon the law and the evidence. It is of no consequence upon the rights of the judge in this connection that no objection had been made to these orations of counsel when they were delivered. Nor is it of consequence that the solicitor replied to them. Doubtless he did and efficiently, demonstrating the folly of indulging in such tirades when able counsel are to follow. Notwithstanding this the judge had his duty to discharge in clearing the skirts of justice of these alien and baneful contentions of counsel.

The statements of Nicholson made to and taken down by the witness Green and sworn to by Nicholson before him, and all other testimony offered going to show statements by Nicholson after he was shot to the effect that he was at fault or to blame for the affair, meaning thereby that he had debauched the defendant's wife, that defendant had been as good to him as a brother, that he did not want any of his relations to prosecute the defendant for the homicide, etc., were properly excluded from the jury whether made under coercion or not, because these statements had no such relation to the circumstances of the killing as to be admissible as dying declarations as which they were offered, not to speak of the irrelevancy and immateriality of many of them. Moreover, had they been received their only office in the case would have been to strengthen the State's theory that the homicide was deliberately planned and committed in the avenging of the wrong done by Nicholson to defendant's wife, so that in no legal sense was the defendant injured by their exclusion. There is no merit in the contention that these statements were contradictory of the dying declarations as to the circumstances of the homicide afterwards made by Nicholson and which were adduced in evidence by the State. They were not so in fact.

[Bonds v. The State.]

There was abundant evidence on the trial of a conspiracy between the husband and wife to kill Nicholson, and the court, therefore, committed no error in allowing the State to prove the latter's dying declaration to the effect that the wife wrote to him to come to see her. This decoy letter having induced him to go to defendant's house on the occasion of the murder, was a circumstance of the killing, and competent against the co-conspirator on trial.

What passed between Nicholson and the defendant several minutes after the shooting while the former was lying helpless on the ground as to defendant's going to him, and what was said and done after he did go was not a part of the *res gestae* of the shooting and not relevant to any issue in the case.

The question propounded to defendant on cross-examination as to his having told any one that he had a venereal disease and the source of it was not answered by the defendant.

We find no error in the record, and the judgment is affirmed.

Affirmed.