[Thomas v. The State.]

# Thomas v. The State.

*Murder.*

(Decided March 2, 1907. 43 So. Rep. 371.)

1. *Jury; Competency of Jurors; Opinion.*—Where a venireman had a fixed opinion derived from printed accounts of the homicide, but stated on oath that he would try the case on the evidence and be influenced by the evidence alone, is not subject to challenge for cause as having a fixed opinion.

2. *Criminal Law; Appeal; Exclusion of Evidence; Harmless Error.*—The accused was not prejudiced by the refusal of the court to permit him to show that he was angry and in a passion before he demanded his child of deceased, the same being irrelevant in extenuation of the offense.

3. *Witnesses; Cross Examination of Accused.*—Accused having testified in his own behalf that the killing was accidental, it was not error to permit the solicitor on cross examination to ask him "So you killed your wife accidentally?"

4. *Criminal Law; Trial; Reception of Evidence; Rebuttal.*—Accused having testified that he had not told W. that he was going to kill his wife, it was competent for the state to show by W. in rebuttal, and as original evidence without the laying of a predicate, that accused said he was going to kill his wife, as showing malice and hostility on the part of accused towards deceased.

5. *Homicide; Instructions; Degrees of Offense.*—The only defense made by accused being that the killing was accidental, he cannot complain of the court's refusal to charge on manslaughter in the first degree.

6. *Same; Trial; Instruction; Effect of Evidence.*—The court stated that it would not charge on manslaughter in the first degree for the reason that there was no evidence in the case applicable to manslaughter; there was no assault and if the killing took place on acount òf words, it would not thereby be reduced to manslaughter; that if the killing was accidental, there was no evidence to show that there was such gross negligence as to make it manslaughter in the second degree; and that if a man does an act in such a negligent manner as to make it wilful he might be convicted of manslaughter in the second degree. Held, a mere statement that there was no evi-

[Thomas v. The State.]

dence relative to manslaughter and not a statement as to the effect of evidence violative of section 3326, Code 1896.

7. *Same; Degrees; Instructions; Statute.*—The court is bound, in a prosecution for murder in the first degree, under section 4857, Code 1896, to charge on murder in the first and second degree.

8. *Criminal Law; Appeal; Instruction; Prejudice.*—A charge asserting that if the jury should find the killing to have been accidental an acquittal should follow, irrespective of any negligence on the part of accused in the handling of a pistol with which the killing was done, less than gross negligence; and that there as no evidence of such gross negligence as to make it manslaughter in the second degree, while objectionable as a charge on the effect of evidence in the last clause, was favorable to accused in the connection in which the words were used and not prejudicial to defendant.

9. *Same; Abstract Instructions.*—A requested charge that the jury could not draw any inference unfavorable to the defendant from his mother's refusal to testify was argumentative and abstract, it not appearing that his mother refused to testify or that she was called to testify.

10. *Same; Instructions Invasive of the Province of the Jury.*—A charge asserting that if the jury should find defendant guilty it was no more their moral duty under the law to hang him than to sentence him to the penitentiary was argumentative and invasive of the province of the jury.

11. *Same.*—A charge requiring the jury not to find accused guilty of any higher offense than manslaughter in the second degree, and than an assault to murder was invasive of the province of the jury and properly refused.

12. *Same; Argumentative Instructions.*—Requested instructions intended to refute or offset the argument of the solicitor are always properly refused.

13. *Same; Instructions Misleading.*—A requested charge that though the jury might believe from the evidence that accused had intended to kill his wife, yet if between the time of forming such intent and the time of the killing something intervened which displaced such intent and was in itself the moving cause of the killing the jury could not find the defendant guilty of murder in the first degree, was calculated to mislead the jury to consider something outside of the evidence.

14. *Same; Reasonable Doubt.*—An instruction that the jury must construe every doubt in favor of the accused was properly refused, their duty being limited to reasonable doubt.

15. *Same.*—An instruction that the jury must give the accused the full benefits of all reasonable doubt arising from any part of

[Thomas v. The State.]

the evidence was properly refused as tending to mislead the jury to give the accused the benefit of the doubt which might be dissipated by other evidence, or which did not exist on a consideration of all the evidence.

16. *Same; Misconduct of Judge; Leaving the Bench; Objections; Review.*—Accused was not entitled to object on appeal to the fact that during the trial of the cause while accused's counsel was arguing to the jury the judge temporarily left the bench, not having made an objection at the time.

17. *Same; Prejudice.*—The fact that the judge during the progress of the trial left the bench long enough to enable him to walk a distance of 68 feet from the courtroom to his chamber to procure a book, is not ground for a reversal of a conviction, especially where no objection is made at the time.

18. *Homicide; Threats; Instructions.*—A charge asserting that unless the jury believe beyond a reasonable doubt that the killing was done in furtherance of previous threats made by accused against deceased as testified to by some of the witnesses, then the jury should pay no attention to such previous threat, was properly refused; evidence of threats being relevant as to whether accused bore hostility, malice or illwill to the deceased.

APPEAL from Mobile City Court.

Heard before Hon. O. J. SEMMES.

Andrew Thomas was convicted of murder, and he appeals. Affirmed.

The defendant was indicted for the murder of Harriet Thomas, by shooting her with a pistol. In impaneling the jury one Owen was called to be qualified on his voir dire, and, upon being asked if he had a fixed opinion that would bias his verdict, said that he had, and volunteered the statement that his opinion had been gathered from the newspaper accounts which he had read, and which opinion the talesman thought would bias his verdict. "The Court: That is not the question. The question is: Is your mind in such a condition that you can go on the jury, and hear the evidence in the case, and render your verdict alone upon the evidence, without reference to that opinion; or would the opinion that you now have have some influence on that verdict? A. I am afraid it would. It could be changed by proper evidence. The Court: The question the court asks is:

3 R

Is your mind in such condition that you can lay that opinion aside and decide the case without reference to that opinion? A. Yes, sir; I think I could. Counsel for Defendant: Suppose the testimony as given on the trial were the same as that given in the newspapers, woudd not that influence your verdict? A. Yes, sid; if it is substantially the same. The Court: Would you be governed by the newspaper report, or by the evidence? A. No, sir; I would be governed by the evidence if it were the same. The Court: But would what you saw in the newspapers have any influence on your verdict— the opinion in the newspapers? A. Not the opinion, but what I read in the newspapers, if the evidence was the same. The Court: If the evidence is substantially the same as that in the newspapers, your verdict is now fixed. A. Yes, sir. The Court: Suppose the court should charge you that the evidence set out in the newspapers was not sufficient to convict, would that influence you, or would you bring in a verdict according to the evidence? A. The question with me was: If the evidence was the same as appeared in the newspaper, was my opinion fixed? I would say it was. The Court: I understand you to answer that, no matter what your opinion is, after hearing the evidence, you could be governed by the evidence alone, and try the case on that evidence? A. Yes, sir. The Court: And try it alone on the evidence? A. Yes, sir. Counsel for Defendant: But if that evidence is substantially the same as what appeared in the newspapers, that would have some influence with you? A. Yes, sir." The defendant then challenged the juror for cause, but the court declined to permit that to be done, and the defendant then excepted to the action of the court, and challenged the juror peremptorily.

The evidence for the state then tended to show that on the morning of the killing defendant went to the house where deeceased was, and, after seeking admittance to the room where she was and being refused, kicked at the door, and when admitted he said something to the deceased about giving him the child, or coming to an understanding with him, and, upon her

refusal to do either, hit deceased, and, as she came to-wards him gaain, shoved her backward, and shot her in the breast, and as she feel to her haunches he shot again, the shot striking her in the head, from which wounds she died almost immediately. The defendant offeied to show by the witness Logan that on several occasions the witness had had sexual intercourse with the deceased. Objection was sustained to the testimony, and the defendant offered and stated to the court that he would prove later, so as to render this evidence admissible, that on the night before the killing the defendant went down town to where his wife was working, and waited for her on the outside; that she came out and joined another man, and walked up the street with him, and that he knocked the other man down and took his wife on home; that after he got in the house he asked his wife what she meant by such action, and she told him that for two years she had done as she pleased, and that she was going to leave him; that for a long time prior to the killing she had had sexual intercourse with other men, and that she was going to leave him and go with this other man, and that she was going to take her child with her; that she had been doing these acts and expected to keep it up; that the morning of the killing the defendant walked into the room and asked her if she was going to give him her child, and she said, "No," that she was going off to live with the other man. When the defendant was put on the stand, it was attempted to bring this evidence out again; but the court refused to permit it, and the defendant excepted. The evidence of the defendant tended to show that the killing was accidental. What is said in the opinion of the oral charge sufficiently sets out the charge excepted to.. The action of the trial court in leaving the room during the argument of counsel is also fully stated in the opinion.

The following charges were refused to the defendant: (5) "The court charges the jury that they cannot draw any inference unfavorable to the defendant from the failure or refusal of his mother to testify on this trial." (4) "The court charges that, if the jury finds the defendant guilty, it is no more their duty under the law

to hang the defendant than it is their duty under the law to sentence him to the penitentiary." (7) "The court charges the jury that there is no more moral duty resting upon the jury to hang the defendant than there is to sentence him to the penitentiary for life." (1) "The court charges the jury that they are to pay no more attention whatever to any inferences drawn by the solicitor, unless they believe beyond all reasonable doubt that the inferences so drawn are correct." (6) "The court charges the jury that they are to disregard, as entirely irrelevant to the case, any statement by the solicitor as to the commission in this county of any other crimes with which the defendant is not shown by the evidence to have been connected." (3) "The court charges the jury that this case is governed entirely by its own facts and surrounding circumstances, and in determining upon what punishment they shall inflict upon the defendant they cannot consider for any purpose the statement of the solicitor that other crimes with which it is not shown that the defendant was concerned or connected had been committed in Mobile county." (8) "The court charges the jury that they must give the defendant the full benefit of all reasonable doubts arising from any parts of the evidence." (9) "The court charges the jury that all reasonable doubts arising from any part of the evidence are to be resolved in favor of the defendant." (2) "The court charges the jury that, if they believe beyond all reasonable doubt that the defendant is guilty of murder in the first degree, they may take into consideration the fact, if they believe from the evidence that it is a fact, that the deceased, to the knowledge of the defendant, had been engaged in illicit sexual relations with other men than defendant; but the court charges the jury that this can be considered by them only in fixing the punishment which the jury shall impose upon the defendant." (10) "The court charges the jury that they must construe every doubt in favor of the defendant." (11) "The court charges the jury that they should construe every doubt in favor of the defendant." (12) "The court charges the jury that, though they may believe from the evidence that the de-

fendant had intended to kill his wife, yet if, between the
time of forming his intent and the time of the killing,
something intervened which displaced this intent and
was itself the moving cause of the killing, the jury can-
not find the defendant guilty of murder in the first de-
gree." (13) "The court charges the jury that, unless
they believe beyond a reasonable doubt that the killing
was done in furtherance of previous threats by the de-
fendant against the deceased, testified to by some of the
witnesses, then they are to pay no attention to such pre-
vious threats whatever." (14) General affirmative
charge. (16) Affirmative charge not to find guilty of
any higher offense than manslaughter in first degree.
(17) Affirmative instructions not to find guilty of any
higher grade than murder in second degree. (18) Gen-
eral affirmative charge. (15) Affirmative charge not to.
find guilty of any highher degree than manslaughter in
second degree. (30) Affirmative instruction not to find.
defendant guilty of any higher grade than assault with
intent to murder.

The defendant was found guilty as charged, and his
punishment fixed at death by hanging.

R. M. SMITH, and E. L. CLARKSON, for appellant.—
Place is an essential element of a court.—*Jackson v.
State,* 102 Ala. 76. The record must affirmatively dis-
close the organization of the lower court.—*McPherson
v. Wiggins,* 40 So. Rep. 961; *Mayhall v. Eddleman,* 41
So. Rep. 425; *Iron Co. v. Railroad Co.,* 41 So. Rep. 418.
The absence of the judge during a part of the argument
of counsel, in a capital case, is reversible error.—*Eller-
bee v. State,* 41 L. R. A. 569; *Horne v. Rodgers,* 49 L.
R. A. 176; *Stokes v. State,* 71 S. W. 248; *Graves v. Peo-
ple,* 75 Pac. 412; *State v. Beurman,* 53 Pac. 874; *People
v. Blackman,* 59 Pac. 573; *People v. Tupper,* 55 Pac.
125; s. c. 68 Am. St. Rep. 44; *O'Brien v. People,* 31 Pac.
230; *Palin v. State,* 57 N. W. 743; *Thompson v. People,*
32 N. E. 968; *State v. Carnagy,* 76 N. W. 805; *Smith
v. Sherwood,* 70 N. W. 682; *Evans v. State,* 80 S. W.
1017; *Bateson v. State,* 80 S. W. 88; *Starr v. U. S.,* 76
S. W. 105.

[Thomas v. The State.]

The constitutional guaranty of a trial by jury does not mean merely a trial before twelve men, but before twelve men presided over by a judge.—*Capital Traction Co. v. Hoff*, 174 U. S. 13; *Lecper v. Texas*, 139 U. S. 468; *Giozzi v. Tiernan*, 148 U. S. 662; *McElvaine v. Bush*, 142 U. S. 159. A court is dissolved by the absence of the trial judge.—*Ellerbee v. State*, 41 L. R. A. 569; *Turberville v. State*, 56 Miss. 798. A charge is erroneous which instructs the jury that they must find the defendant guilty of murder or nothing.—*Gafford v. State*, 28 So. Rep. 407; *Edgar v. State* 43 Ala. 312; *Compton v. The State*, 110 Ala. 24; *Beasley v. State*, 50 Ala. 149. The court erred in voluntarily, and without the request of either party, charging the jury that there was no evidence of manslaughter. —Code of 1896, § 3326. What weight shall be given to the testimony of witnesses is for the jury alone to say. —*Beasley v. State*, 50 Ala. 149; *Huffman v. State*, 29 Ala. 40; *Huff v. Cox*, 2 Ala. 310; *Postal Telegraph Co. v. Brantley*, 107 Ala. 683; *Traun v. Keefer*, 31 Ala. 136; *Morris v. Hall*, 41 Ala. 510. The court cannot, unrequested, charge the jury upon the effect of the evidence. —Code of 1896, § 3326; *Compton v. State*, 110 Ala. 24; *Brown v. State*, 20 So. Rep. 107; *Moore v. Robinson*, 62 Ala. 537; *Mayer v. Building Co.*, 116 Ala. 634; *Gayner v. L. & N.*, 136 Ala. 258. The statement by the judge that he would not charge on manslaughter is a waiver of the necessity for asking special charges. To ask such charges would be an insult to the trial judge.— *Brown v. State*, 40 So. Rep. 107. The court erred in holding that Gayle Owen was a competent juror.— *Jackson v. State*, 77 Ala. 18; *Long v. State*, 86 Ala. 40. Incompetent and illegal questions cannot be asked on cross examination of a witness..—*Bailey v. State*, 107 Ala. 151; *Bullock v. Wilson*, 5 Port. 338.

MASSEY WILSON, Attorney General, for State.—The answer of the juror rendered him competent.—*Jarvis v. The State*, 138 Ala. 117. The court properly sustained the solicitor's objection to the question asked the witness Logan.—*Anglin v. The State*, 137 Ala. 17. The

[Thomas v. The State.]

cross examination of the defendant was proper.—Williams v. The State, 123 Ala. 39; Eastman v. The State, 139 Ala. 67. It was not necessary to lay a predicate as for a confession since the defendant had denied the conversation.—Smith v. The State, 137 Ala. 22. Subject to a few exceptions, the rule is almost universal that questions not raised in the trial court will not be noticed on appeal.—Tuscaloosa Wharf Co. v. Mayor, 138 Ala. 514; Tyree v. Parham, 66 Ala. 424; Knuckols v. The State, 109 Ala. 2; Williams v. The State, 41 South. 997; Birmingham Co. v. Bank, 100 Ala. 249. If the action of the judge was error it was harmless.—Prickett v. The State, 92 Ga. 65; O'Shields v. The State, 81 Ga. 301; Ermlick v. The State, 28 South. 847. The fact that the judge is in another room will not be held to constitute absence within the meaning of the rule contended for.—State v. Porter, 105 Ia. 677; State v. Carnegie, 106 Ia. 483; State v. Benerman, 59 Kan. 586; State v. Smith, 49 Conn. 378; Thompson v. The People, 134 Ill. 378. The court rightly refused to charge on manslaughter.—Gafford v. The State, 125 Ala. 1; Rogers v. The State, 117 Ala. 9. The court did not err in its charge as to the accidental killing.—Fitzgerald v. The State, 112 Ala. 34. Charges 1, 3, 6 and 7 were attempted answers to the arguments of the solicitor.—Tribble v. The State, 145 Ala. 23; Mitchell v. The State, 136 Ala. 139. Charge 2 is an argument.—Austin v. The State, 40 South. 989.

DENSON, J.—The defendant was indicted, tried and convicted of murder in the first degree; the subject of the homicide being his wife.

Unless the opinion of a venireman is of that fixed and definite character as will bias his verdict, a challenge for cause on account of fixed opinion will not lie. Under the rule in this respect, as declared in the cases of Long v. State, 86 Ala. 32, 54 South. 443, and Jarris v. State, 138 Ala. 17, 34 South. 1025, the venireman Gayle Owen was not subject to challenge for cause.—Williams' Case, 3 Stew. 454; Morea's Case, 2 Ala. 275; Frazier v. State, 23 Ohio St. 551; Smith v. Com., 7 Grant. (Va.) 593;

*People v. Cochran,* 61 Cal. 548; *Hopt v. Utah,* 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708.
.· "If a husband finds his wife committing adultery and under the provocation instantly takes her life, the homicide is only manslaughter.."—*Hooks' Case,* 99 Ala. 166, 13 South. 767; *McNeill's Case,* 102 Ala. 121, 15 South. 352, 48 Am. St. Rep. 17; *Dabney's Case,* 113 Ala. 38, 21 South. 211, 59 Am. St. Rep. 92; *Williams' Case,* 130 Ala. 107, 112, 30 South. 484. There is nothing in the evidence as disclosed by the record which tends to show such a provocation; nor is there anything disclosed which tends in the slightest to show self-defense. Therefore the evidence sought to be elicited from the witness Logan was properly disallowed.—*Angling's Case,* 137 Ala. 17, 34 South. 846; *Gafford's Case,* 122 Ala. 54, 25 South. 10.

That the defendant was angry and in a passion before he demanded his child of the deceased was a competent and relevant fact, which might well have been offered in evidence by the state, but could not have been properly considered in extenuation of the offense with which defendant was charged. Therefore the court committed no error prejudicial to the defendant in declining to allow proof to be made of such fact by the defendant.—*Angling's Case, supra.*

The defendant was examined in his own behalf, and his evidence in some degree tended to show that the killing was accidental. On cross-examination he was asked by the solicitor this question, "So you killed your wife accidentally, Andrew?" The court overruled an objection to the question made by the defendant. In this ruling we find no error.—*Williams' Case,* 123 Ala. 39, 26 South. 521; *Hurst's Case,* 133 Ala. 96, 31 South. 933; *Eatman's Case,* 139 Ala. 67, 36 South. 16.

On cross-examination the defendant testified that he did not tell Mrs. Wheeler that he was going to kill his wife. It was competent in the rebuttal, and as original evidence, for the state to prove by Mrs. Wheeler that defendant said he was going to kill his wife. This evidence shows a threat to take the life of the wife (deceased); and therefore tends to show malice or hostility on the

part of the defendant towards the deceased. Nor was it necessary to lay a predicate for the introduction of such evidence.—1 Mayfield's Dig. p. 837; *Smith's Case,* 137 Ala. 22, 34 South. 396.

On the state's evidence, if worthy of belief by the jury beyond a reasonable doubt, the defendant is guilty of murder; and after careful consideration of the evidence offered by the defense we have failed to find anything upon which to rest the doctrine of self-defense.—*Dabney's Case,* 113 Ala. 38, 21 South. 211, 59 Am. St. Rep. 92; *Reese's Case,* 135 Ala. 13, 33 South. 672; *Davis's Case,* 92 Ala. 20, 9 South. 616; *Williams' Case,* 130 Ala. 107, 112, 30 South. 484. Indeed, the only claim made by the defendant on the trial, so far as the evidence discloses, was that the killing was the result of an accident; and in this state of the case, if the court had said nothing in the oral charge to the jury in respect to the law of manslaughter in the first degree, the defendant would have no ground for complaint or upon which to base an exception.—*Dennis' Case,* 112 Ala. 64, 20 South. 925; *Gafford's Case,* 125 Ala. 1, 10, 28 South. 406.

But the court, in respect to the law of manslaughter, said in the oral charge to the jury "I will not charge you upon the law of manslaughter in the first degree, for the reason that there is no evidence applicable to manslaughter in this case. There was no assault in this case; and, if the killing took place on account of words, it would not be reduced to manslaughter. Upon the other phase of the case, if the killing was accidental, there is no evidence to show that there was such gross negligence as to make it manslaughter in the second degree. In such a case, where a man does an act in such a negligent manner as to make it willfulness, he may be convicted of manslaughter in the second degree." The defendant reserved two exceptions to the charge, in the following language:

First. "The defendant thereupon duly excepted to that part of the above oral portion of the general charge of the court wherein the court stated that there was no evidence of such gross negligence as to make the homicide one of manslaughter in the second degree." The

defendant insists here that the charge excepted to violates section 3326 of the Code of 1896, which is in the following language: "The court may state to the jury the law of the case, and may also state the evidence when the same is disputed, but shall not charge upon the effect of the testimony without being required to do so by either of the parties." If it may be properly said of the charge that it was upon the effect of the evidence, then the insistence of the defendant should be sustained. In the case of *Dennis v. State*, 112 Ala. 67, 20 South. 926, the court said: "Because of the difficulty which sometimes arises to distinguish between the more aggravated cases of manslaughter in the first degree and the mildest type of murder in the second degree, it has been declared that it is much the safer rule to charge upon all the degrees of homicide included in the indictment when the party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree." This is sufficient authority to warrant the trial judge in remaining silent on the subject of manslaughter, or even to justify him in refusing charges in respect to that degree of homicide, when his mind is clear that there is no evidence tending to bring the offense within that degree of homicide. But we have no case that we can now recall which holds pointedly that the court may charge ex mero motu that there is no evidence in the case to require the court to charge on the law of manslaughter. Nevertheless, we have a case which holds unequivocally that the court may make a statement of a fact to the jury which is clearly and fully shown by the evidence without dispute (*Miller's Case*, 107 Ala. 40, 57, 19 South. 37); and we do not question the soundness of that case. This being true, when it is clear to the judicial mind that there is no semblance of evidence tending to reduce the offense, if one was committed, to manslaughter in the first degree, and when the defendant in his own evidence only claims that the killing was accidental, we are constrained to hold that the court in the instant case did not violate the section of the Code referred to in saying to the jury

## OF ALABAMA. 43

in the oral charge that there was no evidence applicable to manslaughter in the first degree in the case.. This is not a statement as to the effect of the evidence, but a determination that there is no evidence. It is always the province and duty of the court to determine whether there is any evidence of a given fact or proposition, and it is the province of the jury to determine the effect of the evidence; and while, in a case where there is no evidence of a particular fact, the court is not bound to give a written instruction to the effect that there is no evidence of such fact, yet it may do so without committing error.—*Peck v. Ryan*, 110 Ala. 336, headnote 3, 17 South. 733. It follows that the first exception to the oral charge cannot avail appellant anything.

It is by virtue of section 4857 of the Code of 1896 that the court must, in every case where the defendant is on trial for the highest degree of homicide, charge on murder in the first and second degree.—*Gafford's Case*, 125 Ala. 1, 10, 28 South. 406. It cannot be said that there is no evidence tending to show that the killing was accidental, although that tendency is to be found only in the defendant's testimony.. The bill of exceptions shows affirmatively that what we have quoted is all that the court said in the general charge to the jury on the subject of manslaughter in either degree. According to our construction of that part of the charge which relates to manslaughter in the second degree there is nothing of which the appellant has a right to complain. There is nothing in the bill of exceptions to show that the court did not by appropriate instruction present to the jury the law applicable to the defense of accidental killing, or that such instructions were not satisfactory to the defendant. As there is no exception raising the question, we presume that that defense was fully and properly covered by the court's general charge. The meaning of the charge excepted to is that, if the jury should find that the killing was accidental, an acquittal should follow, irrespective of any negligence on the part of the defendant in the handling of the pistol less than gross negligence; and while the additional words of the court, that "there is no evidence to show that

there was such gross negligence as to make it man-slaughter in the second degree," may constitute a charge on the effect of the evidence, yet in the connection those words were used it is quite apparent that the charge was favorable to the defendant. Likewise it may be said, in respect to the last sentence in the charge, if there is error in it, it is not error prejudicial to the defendant.—*Fitzgerald's Case,* 112 Ala. 34, 20 South. 966; *Austin's Case,* 145 Ala. 37, 40 South. 989, 3 L. R. A. (N. S.) 822.

We come now to consider the charges refused by the court to the defendant. Charge 5, besides being argumentative, is abstract; there being nothing in the record to show that the mother of defendant refused to testify, or that she was called to testify in the case. The case of *Brock v. State,* 123 Ala. 24, 26 South. 329, is not authority for placing the court in error for refusing the charge. In that case the court allowed the solicitor to refer to the fact, and comment on it, that defendant, who was being tried for adultery, failed to put her alleged paramour who was in the courtroom during the trial, on the stand as a witness. This court held the trial court committed error. In this the court emphasizes the rule that reference to such matter is improper; and, if improper in an argument, why not in a charge? It would have been error if the court had charged that the jury might consider such fact. It follows that it was not error to refuse a charge cautioning the jury not to consider it. In short, the matter was outside of the case.

Charges 4 and 7 are mere arguments. Besides, they invade the province of the jury. Charges 14, 18, 17, and 16 are wholly without merit, and in the light of the evidence in the case are entitled to no consideration, and might properly be termed "speculative charges."

Charges 1, 6, and 3, it is apparent, were intended to refute or offset the argument of the solicitor, and for this, if for no other reason were properly refused.— *White's Case,* 133 Ala. 123, 32 South. 139; *Mitchell's Case,* 129 Ala. 39, 30 South. 348; *Brown's Case,* 121 Ala. 9, 25 South. 744; *Hawes' Case,* 88 Ala. 37, 7 South. 302; *Tribble's Case,* 145 Ala. 23, 40 South. 938.

Charges 15 and 30 invade the province of the jury.

Charge 13, besides being invasive of the jury's province, is a misconception of the scope of evidence of threats by a defendant against the deceased. Such evidence may be considered in determining whether there was hostility, malice, or ill will by the defendant towards the deceased.

Charge 12, while attempting to assert the doctrine of · specific intent at the time of the killing in order to constitute murder in the first degree, yet, from the futile effort on the part of the defendant, as shown by the bill of exceptions, to present to the jury irrelevant and incompetent testimony, it is apparent that the "something," whatever that might be, referred to in the charge, was something outside of the evidence that had been per mitted to go before the jury. At least, the charge is calculated to mislead the jury to the belief that they might look to matters outside of the evidence for that "something." The charge was properly refused.

Only reasonable doubts are required to be construed in favor of the defendant. Charges 11 and 10 are erroneous statements of the law; and by them the jury might have been misled to the belief that a doubt of defendant's guilt required an acquittal. They were properly refused.

Charges 8 and 9 were properly refused. The tendency of such charges, if given, would be to mislead the jury to the conclusion that, if they had a reasonable doubt growing out of any part of the evidence, they should give the defendant the benefit of it, even though such doubt were dissipated by other evidence, or did not exist upon a consideration of the whole evidence.—*Nicholson's Case*, 117 Ala. 32, 23 South. 792; *Hale's Case*, 122 Ala. 85, 26 South. 236 (charge 4); *Lodge's Case*, 112 Ala. 107, 26 South. 200; *Liner's Case*, 124 Ala. 1, 27 South. 438; *Gordon's Case*, 129 Ala. 113, 30 South. 30; *Smith's Case*, vcg Ala. 22, 34 South. 396;*Stewart's Case*, 137 Ala. 33, 34 South. 818 (charge 1); *Winter's Case*, 132 Ala. 32, 31 South. 717. Moreover, these charges are covered by given charge 23.

Charge 2 is argumentative.—*Hussey's Case*, 86 Ala. 34, 5 South. 484. Besides, the charge is abstract; there being no evidence in the case to the effect that the deceased had engaged in sextual intercourse with other men. than the defendant.

This brings us to the insistence that seems to be most relied on by appellant's counsel for a reversal. At least, far the greater part of their brief is devoted to it. After the evidence in the case was closed, the solicitor had made his opening argument for the state, and while the concluding argument was being made for the defendant by his counsel the presiding judge left the bench without calling any one to preside during his absence in his stead, and, without ordering a suspension of the trial, walked into his private chamber on the same floor the courtroom was on, and located 58 feet from where defendant's counsel was standing while addressing the jury, walked to a book rack in his private chamber, secured a book, and returned to the bench. The door of the judge's chamber ordinarily is in full view of the point where the defendant's counsel was standing and the jury box; but on this particular occasion the courtroom was crowded with people standing, and the counsel and jury were not visible from the door of the chamber. The book rack was located inside of the chamber, ten feet from the door, and at that point the judge could not hear what was being said by defendant's counsel in his argument. The consent of counsel for defendant was not obtained by the judge for him to leave the bench. But it does not appear that any objection was made by counsel, nor was any point made in respect to the matter by the counsel at any time, nor was any ruling by the presiding judge invoked by counsel, nor was there an exception reserved to the action of the judge by the defendant or his counsel. Neither does it appear that defendant's counsel was interrupted in his argument during the absence of the judge from the bench, or that any question arose to be determined by the judge. It does not appear how long the judge was gone from the bench, and we must presume he went immediately from the bench, secured the book,

and immediately returned; and we must further presume that defendant and his counsel were aware of the fact that the judge left the bench, where he went, and the length of time he was gone, and when he returned. We may and do subscribe to the doctrine that it is the duty of the presiding judge, especially in criminal trials, and more especially where life is involved, to be visibly present every moment of their actual progress, so that he can always see and hear all that is being done, yet at the same time not be required under this doctrine to reverse the instant case. It is a proposition, recognized by all the courts, "that questions not presented in the trial court in some appropriate manner will not be considered on appeal or error. It is a rule of nearly universal application that objections must be made in the trial court in order to reserve questions for review."— 2 Cyc. 677; *Birmingham Loan Co. v. Anniston First National Bank.* 100 Ala. 249, 13 South. 945, 46 Am. St. Rep. 45; *Freeman v. Swan,* 22 Ala. 106; *Smith v. Dick,* 95 Ala. 311, 10 South. 845. See the numerous authorities cited in note 32, 2 Cyc.677. No objection was made in the trial court, no ruling of the court on the point was invoked, nor was an exception reserved. So far as the record shows, the presiding judge's attention was not directed to the impropriety until the bill of exceptions was presented. It is not a matter that goes to the jurisdiction of the court, and, if it were, it does not appear on the record proper, and under the authorities we might well dismiss the question as not being before us for review. Again, the defendant was aware of the absence of the judge, and so was his counsel, but raised no objection. The judge returned; and the trial proceeded to conviction, judgment, and sentence without any question being raised. The defendant knew as well when the judge left the bench and at the time he returned as he did when he presented in his bill of exceptions the point of law that he now urges, as a ground for a reversal, and yet he said nothing about the point when the judge returned, but chose rather to remain silent and take the chances of getting a favorable verdict from

the jury; and so of his own fault is his point in non-reviewable shape.

But, if it should be conceded that it is the duty of the court to consider the question on the record as presented, we are of the opinion that the mere absence of the judge during the progress of the trial, when no objection or point was made at the trial, the absence being only for a few moments—long enough for the judge to walk 68 feet, get a needed book from his chamber adjoining the courtroom, and return to the bench—does not require or authorize a reversal of the judgment of conviction. Especially so when it does not appear that the defendant suffered any harm or detriment on account of the judge's temporary absence. We shall not attempt to differentiate the many cases on the subject, but cite some that are in accord with the ruling here made. We conclude, however, with the admonition that it is the safer practice for the presiding judge to suspend the progress of the trial when it is necessary for him to be absent even for a short time and for a necessary purpose.—*O'Shields v. State,* 81 Ga. 301, 6 S. E. 426; *Pritchett v. State,* 92 Ga. 65, 18 S. E. 536; *Horne v. Rogers,* 110 Ga. 362, 35 S. E. 715, 49 L. R. A. 176; *State v. Smith,* 49 Conn. 378; *State v. Beuerman,* 53 Pac. 874, 59 Kan. 586; *Turbeville's Case,* 56 Miss. 793; *Tuttle v. People,* 36 N. Y. 431; *State v. Carnagy,* 106 Iowa, 483, 76 N. W. 805.

After careful consideration of the record, we have discovered no reversible error, and the judgment of conviction and sentence will be affirmed.

Affirmed.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.