# Hall *v.* The State.

## *Murder.*

(Decided December 15, 1914. Rehearing. denied February 13, 1915. 67 South. 739.)

1. *Homicide; Dying Declarations.*—Where it appeared that deceased believed himself to be in extremis, which in fact, he was, the fact that the attending physician expressed to him the hope and belief that he would recover, did not render his declaration inadmissible as dying declarations; it appearing also that deceased believed and understood the statements of the physician as intended merely as encouragement to him.

2. *Trial; Correcting Verdict; Former Jeopardy.*—Where, under the evidence in the case a conviction of as low a degree as manslaughter in the second degree was not warranted, and the court did not instruct thereon, but the jury returned a verdict for such degree, the court could not decline to receive the verdict and send the jury back for further deliberation on the higher degrees without violating section 9, Constitution 1901, the verdict rendered being an acquittal of the higher degree.

APPEAL from Macon Circuit Court.

Heard before Hon. S. L. BREWER.

George Hall was convicted of manslaughter in the first degree under the circumstances as stated in the opinion, and appeals. Reversed and remanded.

O. S. LEWIS, for appellant. No brief reached the Reporter.

[Hall v. The State.]

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. A sufficient predicate was laid for the admission of dying declarations.—*Hussey v. State,* 87 Ala. 121. There was no evidence that would authorize a conviction of a lesser offense than manslaughter in the first degree, and the court was not in error in declining to receive the verdict, and in sending the jury back for further deliberation as to the higher degree.—*Compton v. State,* 110 Ala. 24; *Gafford v. State,* 125 Ala. 1; *Williams v. State,* 130 Ala. 107; *Thomas v. State,* 150 Ala. 31.

THOMAS, J.—There is no merit in defendant's objection to the dying declarations of deceased introduced by the state. A sufficient predicate therefor was, we think, laid.—1 Mayf. Dig. 284 et seq. The fact that the physician attending deceased expressed to him a hope and belief that he would recover does not render the dying declaration inadmissible; provided the deceased believed himself to be in extremis, which he in fact was. The evidence without dispute shows, too, that he so believed, and that he properly understood and interpreted the words of the doctor as being intended merely as an encouragement to him.—*Hussey v. State,* 87 Ala. 121, 6 South. 420.

Only one other question is presented by the record in this case. It arises upon an objection and exception taken by defendant to the action of the trial court in declining to receive from the jury the first verdict returned by them, which was a verdict finding defendant guilty of manslaughter in the second degree and fixing his punishment at a fine of $25 and 30 days' imprisonment at hard labor. The bill of exceptions, after reciting that the court refused to accept this verdict, then continues as follows: "Whereupon the court instructed

[Hall v. The State.]

the jury that if they found defendant guilty, they could not find him guilty of less than manslaughter in the first degree; that they had not been instructed upon the offense of manslaughter in the second degree. And the court then instructed them to retire and further consider their verdict, giving them again the forms of verdict, including a form for the verdict of not guilty."

The jury thereupon again retired and later returned with a verdict finding defendant guilty of manslaughter in the first degree and fixing his punishment at imprisonment in the penitentiary for one year and one day, upon which verdict judgment and sentence were regularly pronounced.

There is in the record no evidence whatever tending to reduce the homicide committed to involuntary manslaughter; therefore under the law the court in originally instructing the jury was not required to charge on this degree of homicide, which he rightfully refrained from doing.—*Compton v. State,* 110 Ala. 24, 20 South. 119; *Williams v. State,* 130 Ala. 113, 30 South. 484; *Gafford v. State,* 125 Ala. 1, 28 South. 406. He might, also, in view of this state of the evidence, have at that time positively stated, ex mero motu, to the jury that there was no evidence in the case applicable to involuntary manslaughter (*Thomas v. State,* 150 Ala. 31, 43 South. 371) ; and perhaps he might have, of his own motion at that time, instructed them that, if they believed from the evidence beyond a reasonable doubt that the defendant was guilty of the homicide charged, they could not find him guilty of a less degree than voluntary manslaughter. This seems to be the effect of the holding of our Supreme Court in the *Thomas Case,* last cited, but see *Gafford v. State, supra,* which appears to be to the contrary. However, whether the court could have given of his own motion such an instruction or not

in originally submitting the case to the jury, and whether if he had then done so he would have been authorized in subsequently declining to accept the verdict of the jury rendered in positive violation of such instruction as to the law of the case, are questions we need not and do not decide, since the fact is that the court did not give such instructions in originally submitting the case to the jury, but did so only after they had returned a verdict of guilty of involuntary manslaughter, which was not, therefore, in violation of any positive instruction as to the law that had been given them by the court, and which was an acquittal of all higher degrees of the homicide charged. Can the court, not having previously instructed the jury that under the law as applicable to the facts of the case they would not be authorized in returning such a verdict, decline to receive it and send the jury back for further deliberation on the higher degrees of the homicide, when the verdict had acquitted the defendant of those degrees, and when it was not in violation of any positive instruction of the court? We think not. It is our opinion that the court had no more right to decline to receive the verdict than it would have had the right to decline to receive a verdict of not guilty, because the verdict, as seen, was a verdict of not guilty as to manslaughter in the first degree and of murder in both the first and second degree.—*Burton v. State*, 115 Ala. 1 22 South. 585.

The receiving of a verdict by the court is a ministerial, and not a judicial, act.—*U. S. v. Ball*, 163 Ala.662, 16 Sup. Ct. 1192, 41 L. Ed. 300. Consequently, the refusal of the court to receive the verdict, when it should have done so, cannot deprive that verdict of its effect as an acquittal of all higher degrees of the homicide of which it found defendant guilty in the lowest degree.— *State v. Norvell*, 2 Yerg. (Tenn.) 24, 24 Am. Dec. 458;

*People v. Hunckeler,* 48 Cal. 331; *People v. Ny Sam Chung,* 94 Cal. 304, 29 Pac. 642, 28 Am. St. Rep. 129; *U. S. v. Ball, supra.* The action of the court in declining to receive it and in sending the jury back for further deliberations amounted, in practical operation and effect, to setting aside a verdict of not guilty of murder and of manslaughter in the first degree and of awarding the state a new trial on these issues. This cannot be done without violating section 9 of the Constitution of 1901.

The judgment of conviction of manslaughter in the first degree is reversed on the authorities, supra, and the case will be remanded for a new trial (*Waller v. State,* 40 Ala. 325), when if defendant pleads the first verdict as an acquittal of all higher degrees of the homicide than manslaughter in the second degree, he cannot, on the new trial, be convicted of any higher degree.—*Rigell v. State,* 8 Ala. App. 46, 62 South. 977; Con. 1901, § 9.

Reversed and remanded.