218 So.2d 830

**William PALMORE**

v.

**STATE of Alabama.**

4 Div. 293.

Supreme Court of Alabama.

Feb. 6, 1969.

———◆———

E. H. Graves, Jr., Eufaula, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

COLEMAN, Justice.

Defendant appeals from conviction for murder in the first degree with sentence of life imprisonment. The victim was his common-law wife.

The state's evidence is to effect that defendant became incensed against or angry with the wife on account of her relations with another man; that one evening about 10 o'clock, in their home, after defendant had been drinking wine and gin, he and the wife quarreled and fought; and that, in the course of the difficulty, defendant killed her by cutting her throat.

Defendant pleaded not guilty and not guilty by reason of insanity. Defendant testified that one of the children born to the woman while they were living together

was not his child. He testified that deceased had told him she had been out with another man and that he became worried and sick, could not eat, and lost weight. He said that after the fight started he does not know what happened. Defendant said he and the woman were not legally married.

Counsel for defendant has set forth several points in his brief which, he argues, constitute reversible error. We discuss these points in the order in which they appear in brief.

### Assignments 1 and 8.

■ Defendant says the court erred in overruling his objection to two questions propounded to witnesses by the state. One question was: "Do you know the defendant in this case sitting right here?" Defendant says the question was improper because, for aught that appears, the witness could not have identified defendant in absence of aid from the district attorney. The witness answered in the affirmative; and, when next asked defendant's name the witness stated defendant's name. There was no error in overruling the objection. The second question was answered in a similar manner.

### Assignments 2, 3, 4, and 12.

■ In these assignments, defendant asserts that the court erred in overruling objections to questions which assumed facts not in evidence and were leading in that the questions pointed out the answers desired. Whether allegedly leading questions will be permitted is largely within the trial court's sound discretion. Morris v. State, 268 Ala. 60, 66, 104 So.2d 810. We find no prejudicial error in the rulings here complained of.

### Assignment 5.

Defendant says the court erred in failing to strike from the record, after sustaining defendant's objection, a question and answer which appear in the record as follows:

"Q  Had you seen your mother and this man in any prior disagreement or argument or fight some days before?

"A  Yes, sir.

"MR. GRAVES: Object on the grounds it is irrelevent Your Honor and move that it be stricken.

"COURT: Wait a minute.

"Q  When was that, within the last 2 or 3 days?

"COURT: Prior difficulty.

"MR. REEVES: I am trying to show that there was a motive in the defendant's mind.

"COURT: Sustain right now.

"MR. GRAVES: Move that it be stricken and the jury be instructed to disregard it.

"COURT: I don't believe he answered it. If he did gentlemen disregard that last answer."

■ Objection came after the question was answered, but, even so, the court instructed the jury to disregard "that last answer" if the witness had answered. We are not advised of anything further that the court was required to do. The record had been made and we do not think the court had authority to strike out part of it.

### Assignments 6 and 7.

■ Defendant argues that the court erred in overruling his objection to a question asking a witness to describe the condition of the body of deceased, " . . . . if you can." The witness had testified that, after the fight, the witness had gone into the room and looked at the body. It was not error to allow him to testify as to what he knew and saw.

■ Defendant argues that the court erred in allowing the witness, a fifteen-year-old boy, to testify as follows:

"Q When he got you out of the bed you went into the living-room into the front room that is when you saw your mother?

"A No, I went in the kitchen that was where she was laying.

"Q Was she dead?

"A Yes, sir.

"MR. GRAVES: Object and move that that be excluded. It is calling for a conclusion of a medical fact. I don't think the boy is qualified to give that.

"COURT: Overrule."

Defendant says the boy was not qualified to express a medical opinion that his mother was dead.

The objection came after the answer. We do not understand defendant to contend that the woman did not die as a result of having her throat cut. That is an undisputed fact in the case. This witness had already testified, without objection, as follows:

"Q You tell us then, in your own words, tell the jury what happened and what you saw?

"A He kept on fighting my mother and he had been drinking and she asked him was he drunk he said no and she went in the kitchen fixing to fry him an egg and he kept on in there fighting her. He asked her did Sam love her she said no and he said she was lying and he jumped up and knocked her back down in the chair and hold her head back and cut her throat right around here. After he had cut her he called me, Roy and my brother and he said he had killed our mother. We got up and looked at her and Roy Lee he started crying and he made Roy Lee stop crying and come get back in the bed. He told me to get up and cut the lights off after he had killed her he took his knife and washed it off in the wash pan sitting in the chair after he killed her he told me when day come to come tell my grandmother. He asked

me what I was going to tell her I said they was fighting and he killed my mother. He left on out and I cut the lights off and closed the door."

Whether the woman was already dead when the witness saw her body or whether she died some time later is of no significance. If it had been an issue whether she was dead when the witness saw her, or whether she died later, then there might be cause to argue that a lay witness ought not to be allowed to testify that she was dead, but that is not this case. If the ruling was error in any sense, it was without injury to defendant. Rule 45.

*Assignments 9, 10, 11, 13, and 14.*

Defendant assigns for error the court's overruling of defendant's objections to testimony of a police officer as to the body he found when he entered defendant's home on the morning following the woman's death. Defendant assigns as error also the overruling of his objection to the testimony of a state toxicologist as to what he found in a post mortem examination of the body.

Defendant's ground of objection is that the testimony is inadmissible because it was obtained as the result of an unreasonable search and seizure and that its admission violates the rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

It is true that the deputy did not have a search warrant when he entered defendant's home. Defendant was not there and was arrested later at a different place.

The deputy testified that he received a phone call that morning about 5:45 and went to defendant's home; that he knocked on the door and was "greeted by one of the daughters"; that the daughter told him the mother was in the kitchen dead and he immediately went to the kitchen where he saw the body on the floor and saw she was not breathing.

The daughter was later called as a witness by defendant and testified that she

was thirteen years old. We do not find in her testimony any reference to the deputy's coming to the home of defendant or what occurred on the deputy's arrival.

■ We recognize the holding in *Mapp* that testimony unlawfully obtained is not admissible. We do not believe, however, that an officer is making an unreasonable or unlawful search when he enters a home to which he has gone in response to a phone call, and, on his arrival has been told by a child, apparently the oldest member of the family present, that her mother is in the kitchen dead. Under the circumstances of this case, we are of opinion that his going into the kitchen was reasonable and that it would be unreasonable to require the officer to go first to a magistrate and obtain a search warrant before entering the house. Being of opinion that the testimony of the officer and toxicologist, as to the condition of the body, was not the fruit of an unreasonable or unlawful search, we hold that it was not error to admit the testimony.

### Assignment 15.

The state toxicologist was asked by the state:

"Q. In your opinion what would you say was the cause of death . . . . ?"

■ Defendant argues that his objection to the question ought to have been sustained because the witness had not first stated the data on which he bases his opinion. The record does not support defendant's contention. Before the question was asked, the witness had testified in detail as to what his autopsy had disclosed. In a preceding paragraph, we have dealt with defendant's argument that the

testimony is the product of an unreasonable search.

### Assignments 16 and 17.

Defendant assigns for error admission into evidence of certain photographs of the body of deceased over defendant's objection on the ground that "the condition is such to inflame the minds of the jury." The prosecuting attorney stated that the photographs were introduced "to see the gravity of the offense and depth of the wound."

■ The fact that a photograph is gruesome is no ground for excluding it from evidence. Beverly v. State, 281 Ala. 325, 330, 202 So.2d 534; Davis v. State, 257 Ala. 447, 450, 59 So.2d 592.

Photographs showing the wounds inflicted on the body of the deceased and the pocket knife used in inflicting them were held to have been admitted without error in Douglass v. State, 257 Ala. 269, 275, 58 So.2d 608.

■ Under the holdings of this court, the photographs were admitted without error. They show the wounds on the body and tend to corroborate the testimony of the toxicologist as to the number and location of the wounds. Grant v. State, 250 Ala. 164, 168, 33 So.2d 466.

### Assignments 18 and 26.

■ The evidence made a case for the jury and defendant's motion to exclude the evidence and motion for new trial were overruled without error.

### Assignment 19.

During a five-minute recess, the jury apparently separated and defendant moved for a mistrial.[1]

---

1. The record recites as follows:
   "MR. GRAVES: No, sir he was out of his seat at the time. Your Honor, at this time the defendant moves for a mistrial on the grounds that in a capitol case that the Jury became separated and were dis-

bursed over the Courthouse. They were not kept together.
   "COURT: Now, in order to rule on the Motion let me ask each of the jurors during the break that we just got through having, during which time you did become

■ The safe practice in felony trials is not to permit the jury to depart from the presence of the court even on adjournment unless attended by a sworn officer, and not to permit them to separate even then. Arnett v. State, 225 Ala. 8, 9, 141 So. 699.

■ The prevailing rule in this jurisdiction is that a separation of the jury, after the trial has been entered upon and before verdict, creates a cause for reversible error in favor of defendant unless the state affirmatively shows that defendant was not injured thereby. Lynn v. State, 250 Ala. 384, 386, 34 So.2d 602.

Such separation pending a trial is not necessarily ground for a new trial but is sufficient to show a prima facie right to it, and the burden is upon the state, after such separation is shown, to prove that the jurors conversed with no one affecting the prisoner's guilt and that no other influences were exerted which may have biased their deliberations. Arnett v. State, supra. As to burden of proof where separation is by agreement of defendant and his counsel in noncapital felony, see Wright v. State, 262 Ala. 420, 79 So.2d 74.

■ We are of opinion in the case at bar that the state met the burden resting upon it in the instant case and that denial of the motion for mistrial was not error.

*Assignments 20, 21, 22, 23, and 24.*

Defendant assigns for error the action of the court in sustaining the state's objections to questions propounded by defendant to the witness Grafth Palmore as follows:

"Q    Do you know whether or not Arnell was going with another man?

"   .   .   .   .   .   .   .   .   .

"Q    Do you know whether or not Arnell was going with Sam Henderson?"

Defendant assigns for error also the court's action in sustaining the state's objection to questions propounded by defendant to Emma Jean Palmore, daughter of deceased, as follows:

"Q    Did you ever see your mother have relations with another man?

"A    Yes.

separated when you went to get a coca cola, did any of you talk to anybody about this case, did you have a conversation with anyone, did you talk with anyone. Let the record show that each juror by holding up your hand answers in the negative, that you did not talk to anyone about this case during the time you were separated.

"A JUROR: Your Honor, I talked to Lawyer LeMaistre but it wasn't anything having any bearing on the case.

"MR. GRAVES: May the record show that Lawyer LeMaistre is the County Solicitor and the Chief Prosecutor in this case.

"COURT: Let the record show that. You talked with him but you say it had no connection with this case at all?

"JUROR: No, sir.

"COURT: Did anyone talk with you? This question is addressed to each one of you because I think my first one was framed whether you talked with anyone else. Did anyone approach you on the case or talk to you or say anything in the world to you about this case? Hold up

your hand if your answer is no to that. (Pause) Let the record show that all of the jurors answered in the negative that they neither talked nor had anyone talk to them about this case in any manner and on that testimony then, gentlemen, I don't know whether we have to swear you to do that or not; I am not going to swear you, I am just asking you. On that testimony I overrule your Motion for a mistrial.

"MR. GRAVES: Like to except to the ruling.

"COURT: Let's do do this, gentlemen, all of you hold up your right hands to be sworn. (Pause) Now the answers which you have given previously do you make them now to the same questions which I propounded to you under oath. If so, hold up your right hands. (Pause) Let the record show that the same testimony was elicited from the witnesses under oath and on the sworn testimony of the Jurors on examination I do overrule your Motion for a Mistrial and give you an exception in the record."

**508**

"MR. REEVES: Object.

"COURT: Sustain the objection to that.

"MR. GRAVES: I think it might be pertinent in this Your Honor.

"COURT: You have an exception in the record.

"MR. GRAVES: We would like to except. It is our plea of insanity I think would warrant admission.

"COURT: That she saw 8 years ago with John Doe.

"MR. GRAVES: We haven't gotten to that point yet.

"COURT: Sustain the point blank question, whether she had ever seen—

"MR. GRAVES: Suppose she had seen it the very night of the occasion?

"COURT: You might ought to confine your questions to that point of time. Sustain the objection and you have an exception.

"Q Had you seen your mother have improper relations with another man around your house?

"MR. REEVES: Object.

"COURT: Sustain.

"MR. GRAVES: Like to except.

"Q Do you know whether your mother had relations with men other than your father?

"MR. REEVES: Same objection.

"COURT: Sustain."

After careful consideration of the evidence, we find nothing upon which to invoke the doctrine of self-defense in defendant's favor. Defendant's own testimony is to effect that he had been drinking wine and gin, that he and his wife had an argument about his drinking, that they got into a fight and that, after the fight started, he does not know what happened. If a husband finds the wife committing adultery and, under the provocation, instantly takes her life, or the adulterer's, the homicide is only manslaughter. Angling v. State, 137 Ala. 17, 34 So. 846. There is no evidence that the instant defendant found his wife committing adultery on the night of the killing.

Under the principles declared in Gafford v. State, 122 Ala. 54, 25 So. 10, evidence of the wife's infidelity at times and places other than those of the homicide is competent in defendant's behalf only in a case involving the question of self-defense. Angling v. State, supra.

In Thomas v. State, 150 Ala. 31, 43 So. 371, defendant had killed his wife. He offered to show by the witness Logan that, on several occasions, the witness had had sexual intercourse with the deceased. This court said:

> " 'If a husband finds his wife committing adultery and under the provocation instantly takes her life, the homicide is only manslaughter.' Hooks' Case, 99 Ala. 166, 13 South. 767; McNeill's Case, 102 Ala. 121, 15 South. 352, 48 Am.St. Rep. 17; Dabney's Case, 113 Ala. 38, 21 South. 211, 59 Am.St.Rep. 92; Williams' Case, 130 Ala. 107, 112, 30 South. 484. There is nothing in the evidence as disclosed by the record which tends to show such a provocation; nor is there anything disclosed which tends in the slightest to show self-defense. Therefore the evidence sought to be elicited from the witness Logan was properly disallowed. (Citations Omitted)" (150 Ala. at 40, 43 So. at 374)

In *Gafford* and *Thomas,* the defendants had pleaded not guilty. It is clear that evidence of defendant's wife's infidelity at other times was not admissible under the plea of not guilty.

Defendant argues, however, that the evidence of the wife's infidelity, which defendant sought to elicit by the questions to Grafth Palmore and Emma Jean Palmore, is admissible under the plea of not guilty by reason of insanity because it

tends to show the cause of defendant's alleged insanity.

Where defendant had pleaded not guilty by reason of insanity in a homicide case, the defendant had shot deceased after reading a letter written by defendant's daughter in which she stated that deceased had seduced her. With respect to the letter this court said:

". . . . It is equally clear, that the information received at the hour it was, by defendant, through his daughter's letter, whether she told the truth or not,—that deceased had seduced her, —was competent evidence to be considered with all the other evidence in the case, as bearing on the plea of insanity. . . . ." Ragland v. State, 125 Ala. 12, 28, 27 So. 983, 987.

In the instant case, defendant was permitted to testify that his wife had told him of her infidelity with Sam Henderson. At the time Grafth Palmore and Emma Jean testified, however, defendant had not testified and it had not been shown that the fact of the wife's infidelity with Sam Henderson, or anyone else, had been communicated to defendant or was known to him. Since it had not been shown, that the fact of the wife's misconduct was known to defendant when the questions were propounded to Grafth Palmore and Emma Jean, the court will not be put in error for sustaining the objections.

 Unless the fact of the wife's infidelity had been communicated to defendant before the homicide, that fact would not in anywise affect his mental condition. Blackerby v. Commonwealth, 200 Ky. 832, 837, 255 S.W. 824. See also People v. Osmond, 138 N.Y. 80, 87, 33 N.E. 739, and Alexander v. State, 66 Okl.Cr. 219, 224, 90 P.2d 949.

### Assignment 25.

This assignment recites:

"25. The trial court erred in overruling defendant's objection to that part of the District Attorney's closing argument in which the District Attorney argued that the defendant had tortued (sic) the deceased before killing her, when there was no evidence of said fact. (Tr. P-58)"

 The witness Snipes testified that the wife's body had a severe cut from ear to ear, one or both wrists were cut, and her body had some cuts. The witness Pernell testified that his observations reveal several small superficial cuts over the body; two gashes on the left wrist; two cuts on the neck, one five and the other three and a half inches long; and a stab wound slightly back of the right eyebrow.

This evidence, we think, sufficiently supports an inference that defendant had tortured the deceased so that the court did not err in overruling defendant's objections to the argument here complained of.

We are of opinion that the judgment should be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and BLOODWORTH, JJ., concur.