325 So.2d 195

**Gene BELCHER**

v.

**STATE.**

**4 Div. 318.**

Court of Criminal Appeals of Alabama.

March 18, 1975.

Rehearing Denied April 22, 1975.

George E. Trawick, Ozark, Patterson & Rinehart, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State, appellee.

DeCARLO, Judge.

Larceny; three years.

The Grand Jury of Barbour County, charged that Gene Belcher " . . . feloniously took and carried away timber to-wit: saw logs a further description of same being unknown to the Grand Jury; being of the total and combined value of, to-wit; $500.00; the personal property of Guice Slawson . . . "

Guice Slawson, manager of Midway Lumber Co., Inc., Louisville, Alabama, contracted with appellant to cut timber at the rate of $40. per thousand. Stumpage was to be paid only when tracts were obtained by appellant.

In the latter part of September or early October, 1973, appellant started cutting on a tract Slawson had acquired from Catherine Davis, situated behind Hubert Tyler's store on Blue Springs Highway. Before Christmas, 1973, Belcher was cutting timber behind Slawson's house and was paid $30. per thousand. Slawson explained the rate was different because he loaded the logs and not Belcher.

Around December 27, 1973, Belcher returned to cutting timber on the Davis place, and according to Slawson, appellant's equipment remained in the woods where the operation continued until January 26, 1974.

On Monday, December 31, Belcher requested money to pay his men, and Slawson gave him $150. During this time Belcher commented he had been unable to haul timber due to rainy weather but had piled the logs already cut.

The week before January 26, 1974, Slawson noticed approximately 5,000 feet of logs piled behind the house of appellant's father and estimated their worth at about $500. He recognized the logs as those being cut off the Davis place. He admitted the logs had no distinguishing marks but were the same kind of pine.

Slawson testified he could not identify logs at a mill as coming from a particular tract but did recognize the logs in question as being from the Davis place. Although he could not absolutely swear they were the same, he maintained they were similar in appearance to those Belcher was unloading.

Slawson further stated the logs were not piled behind the home of appellant's father before Christmas. He was aware, however, there wasn't enough money coming in for the timber he knew to be there.

On January 26, 1974, Slawson confronted appellant about the logs beside his father's place and was told they were bought from Henry Chambers, his foreman. Slawson testified he knew the timber on Chambers' land was cut in 1972, and further, in August, 1973, Slawson had cut and moved the timber on the tract belonging to appellant's father.

During the trial a letter addressed to Slawson from Ralph Reynolds of the Jones-Reynolds Lumber Co., Abbeville, Alabama, was introduced into evidence. It listed these purchases of lumber and pulpwood from appellant:

```
"Dec. 28, 1973    1555' logs
"Jan.  4, 1974    1217' logs
"Jan. 11, 1974    2558' logs, 3.57 cords pulpwood
"Jan. 18, 1974    3920' logs."
```

In conclusion, the letter stated checks for these purchases were made to Henry Chambers with no stumpage deductions.

Slawson stated he did not authorize Belcher to make these sales, and he estimated this timber to be worth about $1,100.00.

Charles Arrington was first called by the state and testified he worked for appellant about four weeks from December, 1973 until January, 1974, hauling pulpwood to Abbeville. During his testimony, he recalled the occasion when appellant directed him to haul a load of logs from the Davis tract to the home of appellant's father. When Arrington refused, appellant responded, "just slip over and I'll carry them." Arrington stated he rode the truck to town, and Belcher drove off with the logs.

On cross-examination, Arrington admitted signing a statement written by defense counsel, reciting Arrington had not hauled any logs but only pulpwood to Abbeville, and further that Belcher did not ask him to haul logs belonging to Slawson anywhere; that Slawson was told Belcher was going to haul logs to the home of appellant's father, but Belcher was to buy them; and Arrington never hauled any logs because Belcher didn't buy them.

Arrington acknowledged he could not read and that the statement was read to him by defense counsel.

Later appearing as a defense witness, Arrington's testimony reaffirmed the signed statement. On cross-examination, he recanted and admitted riding with Belcher when logs from the Davis place were taken to the home of appellant's father.

When defense counsel specifically asked if the load was pulpwood, Arrington replied, "I didn't pay no attention to whether it was pulpwood or logs. I suspect it was logs."

State's witness, Henry Chambers testified he worked for appellant as foreman from right after Christmas, 1973, until the end of January, 1974. During this time Chambers did not cut any of his own timber nor sell any to appellant.

Chambers stated they moved onto the Davis place right after Christmas, but did move to Belcher's place on one occasion and then returned. The four checks drawn on Jones-Reynolds Lumber Co. were brought to him by the appellant. After cashing the checks, Chambers would pay the men and give the balance to appellant who then paid Chambers.

On cross-examination he stated he did not know where the logs were coming from that were sold in his name.

Appellant testified that he cut timber on his father's place in September and October, 1973, and ramped it below the house. Logs remained there two to three months and could not be seen from the road. Belcher explained that loads of these logs were sold in Henry Chambers' name for several different reasons: (1) to keep Slawson's money separate (2) to save on taxes and (3) to provide for payroll expenses. After appellant began cutting tim-

ber on the Davis place around August or September, 1973, he moved on and off about three or four times. Belcher further explained that Slawson did not get all of his father's timber, but only about 15 acres. Appellant denied taking any logs from the Davis place to his father's house or directing Arrington to. He further denied taking any logs to Jones-Reynolds Lumber Co., but admitted carrying pulpwood, which under his agreement with Slawson, he could sell to anyone.

Belcher admitted when Slawson reduced the price of logs from $40. to $30. per thousand it made him mad and he stated he would get even.

He explained that "I owed him some money and I was going to pay him and get even with him by quitting."

### I

Counsel for appellant maintains the court erred in overruling his motion to exclude the state's evidence.

In *Meadows v. State*, 36 Ala.App. 402, 56 So.2d 789, this court held:

"... Larceny is the felonious taking and carrying away of personal property of another with the intent on the part of the taker to convert it to his own use, or to deprive the owner thereof. The offense involves a trespass on the possession of another. *Ludlum v. State*, 13 Ala.App. 278, 69 So. 255; *McKinney v. State*, 12 Ala.App. 155, 68 So. 518; *Kramer v. State*, 16 Ala.App. 456, 78 So. 719; *Weldon v. State*, 17 Ala.App. 68, 81 So. 846.

"If a person acquires the possession of personal property tortiously, and thereafter forms the intent and executes the purpose to convert it, he may be guilty of larceny."

In the case before us we have substantially summarized all of the facts submitted to the jury, and there appears to have been factual issues from which a jury could infer larceny.

For this reason, we will not disturb the verdict.

### II

In the instant case, appellant was arraigned on February 13, 1974, and after his plea of not guilty the court set the case for trial on March 5, 1974.

Appellant now insists he was denied due process when the court without his consent or knowledge moved the trial date to March 4, 1974.

Counsel argues this was in contravention of Title 15, Section 316, Code of Alabama, 1940, which provides:

"It is the duty of the clerk of the circuit court to set for trial all criminal cases in his court, except capital cases, and cases of parties in custody, for particular days; *and no case so set shall be called for trial before such day*." (Emphasis ours)

Addressing a similar issue in *McDaniel v. State,* 97 Ala. 14, 12 So. 241, Justice Head commented:

"If there was an irregularity in setting this cause down for trial, as appellant's counsel contends, it was waived. Appellant went to trial without insisting upon the irregularity and can not now, for the first time, he [sic] heard to complain of it."

It is our judgment that what Justice Head stated is applicable here, and in the absence of some adverse ruling to the appellant's cause, we have nothing to review.

### III

Next it is contended that twice during the trial, proceedings were held outside the hearing of appellant and the court reporter.

Counsel insists appellant's right to be present throughout all the proceedings of

his trial was violated when the court did not assure that such proceedings were being preserved.

In 23 C.J.S. Criminal Law § 974, we find the following comments on this point:

". . . The exclusion of accused during conferences of court and counsel on questions of law, at the bench or in chambers, has been considered not to constitute a denial of the right of accused to be present at every stage of the trial."

 The bench conferences complained of were participated in by appellant's counsel along with the state's attorney, and Belcher was always present in the courtroom. No objection was interposed, therefore, we do not believe he can now complain of any possible prejudice. *Steiner v. United States,* 5 Cir., 134 F.2d 931; *Wade v. State,* 49 Ala.App. 601, 274 So.2d 626.

### IV

During the trial the jury was allowed to separate without consent of the appellant. This fact was later assigned as a ground for appellant's motion for a new trial and after an evidentiary hearing on this point, the motion was overruled. Appellant now asserts this as error, and argues the state failed to show no injury resulted from the separation.

In Alabama, one of the leading cases on this point is *Palmore v. State,* 283 Ala. 501, 218 So.2d 830. There Justice Coleman cited this prevailing rule:

". . . [T]hat a separation of the jury, after the trial has been entered upon and before verdict, creates a cause for reversible error in favor of defendant unless the state affirmatively shows that defendant was not injured thereby. *Lynn v. State,* 250 Ala. 384, 386, 34 So. 2d 602.

"Such separation pending a trial is not necessarily ground for a new trial but is

sufficient to show a prima facie right to it, and the burden is upon the state, after such separation is shown, to prove that the jurors conversed with no one affecting the prisoner's guilt and that no other influences were exerted which may have biased their deliberations . . ."

 On the motion for a new trial before us, testimony was taken from the twelve jurors participating in appellant's trial. Each juror testified no one spoke to him about the case. On cross-examination however, two of the jurors said they did not remember discussing the case with anyone.

After a close examination of the entire record of this hearing, we find the state did meet its required burden.

No error appears in the record.

Affirmed.

All the Judges concur.