TYSON, Judge.
James Jennings, Jr., was indicted for rape in the first degree in violation of § 13A-6-61, Code of Alabama 1975. The jury found the appellant guilty “as charged in the indictment” and the trial judge set sentence at twenty years’ imprisonment in the penitentiary.
The prosecutrix testified that she was employed at University Hospital in Birmingham in February, 1981, and worked the 11:00 p.m. to 7:00 a.m. shift. On the night of February 4,1981, at approximately 10:55 p.m., the prosecutrix parked her car about a block and a half from the hospital and started walking toward the hospital with her purse and books in her hands. When she got to the overpass between the VA hospital and University Hospital, she heard someone running behind her. She turned around and saw a black male running toward her so she dropped her purse and her books and began to run. The black male grabbed her, she screamed and they began to struggle. As they were struggling, a black hatchback car pulled beside them and the passenger door was open. The driver of the car, another black male, grabbed her hair and she was pushed into the floorboard of the car. Once inside the car, the man in the passenger seat put a knife to her throat. They drove off and then put her in the back floorboard. They drove around for about twenty to thirty minutes and when they stopped, the back seat was put down.
The prosecutrix’s clothes were removed and both of the black males had sexual relations with the prosecutrix twice. They then let the victim out of the car at the *772 U-Totem in Tarrant City. The prosecutrix lost a hair clip and an earring in the car.
As the car was driving away, the prosecu-trix obtained the tag number. She then called the police and officers from the Birmingham, Tarrant City and the University of Alabama at Birmingham Police Departments talked with her. The prosecutrix gave the police the car’s tag number, her remaining earring and told them the car had a small steering wheel and plastic on the windows.
Approximately one week later, a friend came and picked up the prosecutrix at school and the two went to a downtown parking lot. When they arrived, she saw the car that she rode in the night that she was raped. Her father and brothers were there also. A short while later, three black males walked to the car and her brothers and father started fighting with the men. The victim left to find a policeman and then returned. The police who came there asked if these were the men who raped her and the prosecutrix said no because she was afraid.
However, the next morning the prosecu-trix went to the police station to view two lineups. She picked out one man in each of the lineups and testified these two men were the ones who raped her. She positively identified the appellant, in court, as the man who grabbed her, put her in the car, held the knife to her throat and raped her.
Dr. Carl Moore, a resident at University Hospital testified he was in the conference room at the VA Hospital around 11:00 p.m. on February 4, 1981. About that time, he heard someone scream and he went to the window. He said the screams were coming from the crosswalk between the two hospitals and he called the police.
Lieutenant Dan Strunk of the University of Alabama at Birmingham Police testified he went to the overpass between 'the hospitals on the night of February 4, 1981, because someone had reported hearing screams coming from that area. It appeared that someone had been kidnapped because a purse and books were found at the scene. The purse belonged to the prose-cutrix who they learned was employed at University Hospital.
Strunk went back to the police station. About an hour and one-half later, Strunk received a call to go to a U-Totem in Tar-rant City. When he arrived, he found the prosecutrix sitting in a Birmingham police ear. She appeared upset and distraught and her clothes and hair were mussed. The prosecutrix said she was bruised and said her head hurt.
Sergeant Ann Ballard of the Birmingham Police Department conducted the lineup on February 11, 1981. She stated that the prosecutrix viewed both lineups and picked out the appellant in one of these. All of the persons in the lineup were black males and dressed alike, and were of similar height and weight.
Barney Waites of the University of Alabama at Birmingham Police Department stated he went to a downtown parking lot on February 10, 1981. He saw a black Vega Hatchback. It had a small steering wheel and plastic on the windows. The tag number matched the one the prosecutrix had given the police. The car was impounded and the owner was determined to be Edward Earl Dunkins. Both Dunkins and the appellant were at the scene that night, along with the prosecutrix’s father and brothers.
Jimmy Steve Brown, an evidence technician with the Birmingham Police Department, conducted a search of the impounded vehicle. An earring, which matched the earring the prosecutrix earlier gave to the police, was found inside the car along with a hair clip.
Two witnesses testified as to the good reputation of the appellant in the community-
The appellant testified he knew Dunkins but was not with him on the-night of February 4, 1981, and denied any involvement in the rape. He said he was at home with his mother, father and a cousin.
On February 10,1981, the appellant, Dun-kins and Dunkins’ brother went to a movie *773 downtown. When they returned to Dun-kins’ car, one of the tires was flat. Then the prosecutrix’s brothers and father jumped him, beat him and stayed until the police came. He stated he was not given his rights and was threatened after he was taken into custody.
James Jennings, Sr., testified that his son was at home on the night of Tuesday, February 4,1981, with him and his wife. However, February 4 was on a Wednesday night, but Jennings said the appellant was at home that night too.
Barney Waites testified he interviewed the appellant on the night of February 10, 1981. The appellant was given his Miranda rights and was given no threats, nor promises or hopes of reward or other inducements to give a statement. The appellant told Waites that he was with Dunkins on the night of February 4, 1981, but that Dunkins dropped him off before the rape occurred. Ricky Dunkins told the appellant that Edward Earl Dunkins picked up someone at the airport and the two of them picked up a white girl on the street in Southside and took her to Tarrant City where they raped her. The appellant never told Waites that he was with his mother and father at home on the night of February 4, 1981. He said he was at his sister’s house.
I
The appellant contends the State was allowed to introduce immaterial evidence to bolster the prosecutrix’s testimony. The evidence the appellant complains of concerns testimony by the prosecutrix that she picked out Edward Earl Dunkins from a lineup.
We fail to see how this could be considered immaterial evidence. The prosecu-trix testified that she was raped by two black males. It was certainly proper to allow her to testify that she selected Dun-kins from a lineup. The car used on the night of the rape belonged to Dunkins, and he was with the appellant on the night they were apprehended in downtown Birmingham.
Furthermore, we fail to see how this harmed the appellant’s case. The prosecu-trix’s identification did not point to the guilt or innocence of the appellant, but to Dunkins’ guilt. The jury certainly would have learned of the identity of Dunkins later in the trial as evidence was presented that Dunkins owned the car which carried the tag number that the prosecutrix gave to the police. The appellant himself told the jury that Dunkins had committed the rape in question.
Therefore, the trial judge did not err by allowing the prosecutrix to testify that she picked out Dunkins from a lineup. McLoyd v. State, 373 So.2d 1175 (Ala.Cr.App.1979), cert. denied, 373 So.2d 1185 (Ala.1979).
II
The appellant argues his motion to exclude should have been granted because the State did not provide sufficient evidence to connect him with this crime.
We do not agree. The prosecutrix identified the appellant in a pre-trial lineup and made a positive in-court identification. Her identification was based on her eye-witness view of the appellant on the night in question. She certainly was able to get a good look at the appellant while she was being abducted and while she was being raped.
The lineup was conducted one week after the rape occurred. No suggestions were made to the prosecutrix as to whom she should choose. She was positive of her identification both at the lineup and also at trial. Altman v. State, 399 So.2d 928 (Ala.Cr.App.1981).
Therefore, we hold that the prosecutrix’s identification was reliable and was sufficient to connect the appellant with the offense charged, i.e., the rape at issue.
The appellant also urges that evidence of an alibi created a reasonable doubt as to his guilt. The appellant’s alibi was that he was at home on the night of the rape with his parents and a cousin. Only his father testified concerning his alibi. His father stated he was sure his son was home on Tuesday, *774 February 4,1981. When it was pointed out that February 4 was a Wednesday, the father stated he was sure his son was home on that night also.
Furthermore, there was evidence that the appellant told police he was at his sister’s house on the night of the rape, not at his parents’ home.
“This court will not disturb a verdict of conviction on the grounds of insufficiency of the evidence, ‘unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust.’ ”
Johnson v. State, 378 So.2d 1164 (Ala.Cr.App.1979).
This court is not so convinced. There was sufficient legal evidence in this case from which the jury could and did by fair inference, find the appellant guilty of rape in the first degree. The jury properly resolved this issue. Harris v. State, 333 So.2d 871 (Ala.Cr.App.1976).
Ill
The appellant argues that the use of the word “rape” by the prosecutrix during her testimony was reversible error.
We can find no objection by defense counsel in the record as to the State’s use of the word “rape” and the appellant has failed to point one out to us on this review. “Matters not objected to at the trial level cannot be considered for the first time on appeal.” Moore v. State, 415 So.2d 1210, 1217 (Ala.Cr.App.1982).
Therefore, for the reasons stated above, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.